UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BARBARA STEWART

Plaintiff,

-against-

MICHELE STEWART
aka Michele Bouman-Stewart

Defendant.

**AFFIDAVIT**

Civ. No. 1:18-V-201

**STATE OF CONNECTICUT** )
                        )
**COUNTY OF** Fairfield )

WILLIAM P. STEWART, III, being duly sworn, deposes and says:

1. I reside at 3 Benedict Court, Greenwich, CT. Plaintiff in this case is my mother, and defendant is my ex-wife.

2. Michele and I were married in 1990. We lived in my apartment on East 59th St. in New York City from the time of our marriage until October 1994, when we moved to Switzerland. We have two children together.

3. At all times during our marriage, and for many years after we separated in 2000, Michele worked for W.P. Stewart Co., Inc., which was a New York company that had a principal office at 527 Madison Avenue. During the time she worked for W.P. Stewart, Michele was paid by the New York office and she in turn paid Federal and New York State taxes. I found in my files a copy of some pay stubs and paychecks from 2002 and 2005. Accurate copies of those documents contained in my files are attached herein at **Exhibit A**.

1

4. In addition to her salary and bonuses, Michele received pension benefits that were maintained in an account until the company was sold in 2013, as indicated in the attached letter dated November 26, 2013 addressed to the New York City apartment we lived in. *See* **Exhibit B**.

5. I am aware that my mother owned expensive jewelry and that she entrusted that jewelry to Michele for safekeeping. Michele and I discussed my mother's jewelry on occasion. On some of these occasions, Michele acknowledged that a company called "Topaze" existed and expressed her understanding that the jewelry she was entrusted with was my mother's to use as she wished until my mother's death. Michele also understood that, on my mother's death, the jewelry was to be passed onto her granddaughters, one of whom is my daughter.

6. From my discussions with her, I am confident there was no confusion on Michele's part that my mother's jewelry was not owned by her, and that my mother could do with it as she pleased while she was alive. Michele would often say that she was "responsible" for the jewelry, and that she had been authorized by my mother to access those pieces that were secured in my mother's Bank vault in Switzerland. Attorney John Iglehart, who was counsel to my parents and Michele, assisted Michele with managing the jewelry.

7. Michele and I separated in 2000, and I promptly moved back to the U.S. Shortly after we separated, Michele started a divorce action against me in Switzerland. Since that time, Michele has traveled to New York State numerous times, usually about twice per year, and has stayed in the City in the 59th St. apartment as well as a 58th St. apartment in which my father resides. She has also done work renovating and furnishing these apartments through her company, Bouman Interiors. Both of our children have attended college in the U.S., and my daughter, Vanessa, graduated from Vassar College in Poughkeepsie, New York in 2016. My son, William, just graduated from Colgate University in Hamilton, New York.

8. During my divorce proceedings, Michele did not list my mother's jewelry as an asset of hers. To the contrary, I recall her vigorously insisting to the Swiss tribunal that the jewelry was my mother's, and she was merely holding it for her. I also recall Topaze being discussed in Court proceedings, although I cannot recall the context or what was said specifically.

9. In 2012, when I was having some financial challenges, my mother offered to give me an expensive piece of jewelry that was being held by Michele. I picked it up from Michele, who handed it over without complaint on instructions from plaintiff. I did not ask for, or get, Michele's permission to take possession or ownership of that piece of jewelry.

10. Following our separation, Michele has claimed that she has an interest in my trust. During litigation over the trusts in New York State commencing around 2007, Michele retained a New York law firm to protect her claimed interest in my trust. That issue has still not been resolved to my knowledge.

11. In 2008, I got a judgment of divorce against Michele in Connecticut. In 2012, a "Decree By Default" was entered in favor of Michele and against me by the Swiss Civil Court, awarding Michele a judgment against me for 1.2 million Swiss francs, which is close to the equivalent in dollars. *See* Certified Translation of Decree, attached herein at **Exhibit C**. In 2015, Michele retained a New York law firm to sue me in Supreme Court, New York County, and following contested litigation, in July 2015, a judgment was entered against me in that Court. *See* Judgment, attached at **Exhibit D**. Since that time, Michele, with the assistance of John Iglehart, has been negotiating with my father to resolve that litigation and satisfy the outstanding judgment.

12. I do not believe that Michele is a thief, or that she agreed to be responsible for the jewelry with the intention to lay claim of ownership over it. I would surmise that her refusal to return the jewelry to its rightful owner is based on advice or instructions she is getting from others.

13. The above statement is true to the best of my knowledge and recollection.

DATED: April 21, 2018

_____
William P. Stewart, III

Sworn to before me this 21
day of April, 2018.

_____
Notary Public  John Kane
EXP 7/31/2021

4