IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA STEWART,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MICHELE STEWART a/k/a Michèle Bouman-Stewart,<br><br>　　　　　Defendant. | Civil Action: **1:18-cv-00201-GWC**<br><br>***AFFIDAVIT OF*<br>*MICHELE BOUMAN-STEWART*** |

**I, MICHELE BOUMAN-STEWART, hereby swear, under the penalty of perjury, the following:**

1. I am a Dutch citizen and a resident of Switzerland.

2. I reside at my home in Villars, in the Canton of Vaud, and have resided in Switzerland for 24 years.

3. I have personal knowledge of the facts set forth herein.

4. I submit this Affidavit in support of the Motion to Transfer Venue to the U.S. District Court for the Southern District of New York.

5. William P. Stewart, Jr. ("**Bill**") resides in New York City. Bill has knowledge related to the formation of Topaze Investments, Ltd. ("**Topaze**"), as he and Plaintiff Barbara Stewart ("**Plaintiff**") retained the legal services of John Iglehart ("**Iglehart**"), a Swiss attorney located in Geneva, Switzerland to form Topaze.

6. Iglehart resides in Switzerland. Iglehart formed Topaze as an Irish company, and then changed Topaze from an Irish company to a company organized under the laws of the British Virgin Islands. Iglehart then changed the name from Topaze Investments, Ltd to DGBF Holdings

Ltd. ("**DGBF**"). A copy of the Deed of Transfer dated September 30, 1999 and the Certificate of Incorporation of the Territory of the British Virgin Islands bearing No. 343647 is attached hereto as **Exhibit "1"**.

7. Iglehart served as a director of Topaze since its inception and of DGBF as reflected in the March 19, 2007 Fiduciary Agreement. A copy of the March 19, 2007 Fiduciary Agreement is attached hereto as **Exhibit "2"**.

8. Charles Target ("**Target**") is Plaintiff's former son-in-law and lives in Hong Kong. Target was married to Plaintiff's now deceased daughter, Lisa Stewart. Target was the original director and shareholder of Topaze.

9. Target recently married a New York resident who resides in New Rochelle, New York. Upon information and belief, Target spends part of his time in New Rochelle. Target was the original director and shareholder of Topaze.

10. William P. Stewart, III ("**Tres**") is Plaintiff's son and my ex-husband. He resides in Greenwich, Connecticut. Tres was involved in taking direction from Plaintiff with respect to obtaining pieces of jewelry from me to deliver to Plaintiff.

11. Greg Stewart ("**Greg**"), Plaintiff's son, resides in Ridgewood, New Jersey. Greg has been employed by the WP Stewart Group of Companies to manage the family affairs for many years. Greg has personal knowledge relating to conversations with Plaintiff regarding insuring the jewelry for Topaze.

12. Greta Gallas ("**Gallas**") was an assistant Comptroller at WP Stewart Group of Companies. She currently lives in Ridgefield, Connecticut.

13. Gallas helped prepare Plaintiff's financial statements in 2004. Plaintiff advised Greta that "her jewelry" should not be listed as an asset on her financial statements because the

jewelry was not owned by Plaintiff, but was owned by Topaze and Plaintiff did not own Topaze. A copy of a May 11, 2004 email from Ms. Gallas to Plaintiff and her response are attached hereto as **Exhibit "3"**.

14. Ralph Belfiore was/is the Comptroller at WP Stewart Group of Companies. He likely has knowledge of Plaintiff's treatment of the jewelry on her personal books and records during the relevant times involved in this lawsuit.

15. Mr. Belfiore currently lives in Wantaugh, New York.

Signed under the penalties of perjury.

Dated: January 0*J*, 2019

_____
Michèle Bouman Stewart

Subscribed and sworn before me this ___ day of January 2019.

_____

Légalisation numéro 10'417.-

Sur la base d'une confirmation orale, le soussigné **Nicolas VAUTIER**, notaire à Montreux, atteste l'authenticité de la signature apposée ci-dessus par **Michèle Henriëtte BOUMAN**, née le 15 décembre 1967, laquelle a justifié de son identité par la présentation d'une pièce officielle.

Montreux, le trois janvier deux mille dix-neuf.

**APOSTILLE**
(Convention de La Haye du 5 octobre 1961)

1. Pays: SUISSE

   Le présent acte public
2. a été signé par ..Nicolas Vautier..
3. agissant en qualité de ..notaire..
4. est revêtu du sceau/timbre de ..Nicolas Vautier Notaire..

   Attesté
5. à Lausanne    6. le ..3 janvier 2019..
7. par la Chancellerie d'Etat du Canton de Vaud
8. sous No ..20..
9. Sceau/timbre:                10. Signature
                                 pr le Chancelier d'Etat:
                                 Yanick BRUHIN

1

# DEED OF TRANSFER

**THE UNDERSIGNED:**

TOPAZE INVESTMENTS LTD., incorporated in Ireland, as "Transferor"

And

TOPAZE INVESTMENTS LTD., incorporated in the British Virgin Islands, as "Transferee";

**WHEREAS:**

- Transferor holds a bank account and certain items of jewellery on its balance sheet

- Transferor and Transferee have entered into an agreement according to which the Transferor is obliged to transfer these assets in their entirety, along with all associated insurance policies and other rights and obligations to Transferee;

**HEREBY AGREE AS FOLLOWS:**

- Transferor does hereby transfer the aforementioned assets and Transferee hereby accepts the assets from Transferor will all rights and obligations attached thereto.

**THUS SIGNED IN THREEFOLD**, this 30th day of September 1999.

Transferor:
Topaze Investments Ltd., (Ireland)

Transferee:
Topaze Investments Ltd., (B.V.I.)





**TERRITORY OF THE BRITISH VIRGIN ISLANDS**

**THE INTERNATIONAL BUSINESS COMPANIES ACT**
(CAP. 291)

**CERTIFICATE OF INCORPORATION** (SECTIONS 14 AND 15)

No. 343647

The Registrar of Companies of the British Virgin Islands HEREBY CERTIFIES pursuant to the International Business Companies Act, Cap. 291 that all the requirements of the Act in respect of incorporation having been satisfied,

**TOPAZE INVESTMENTS LTD.**

is incorporated in the British Virgin Islands as an International Business Company this 16th day of September, 1999.

Given under my hand and seal at Road Town, in the Territory of the British Virgin Islands

REGISTRAR OF COMPANIES

CRI00113

# FIDUCIARY AGREEMENT

Between

Ms Michèle Stewart,
Le Dragon, 1884 Villars-sur-Ollon,
hereafter referred to as « the Client »,

on the one hand

and

the law firm of Mes Louis M. Mudry and John H. Iglehart
hereafter referred to as « the Directors »,

on the other hand

The present Fiduciary Agreement is concluded on the following terms and conditions:

## Article 1

At the request of the client, the Directors have incorporated a company whose name is DGBF Holdings Ltd..

and have accepted appointment as members of the Board of Directors of said company.

The company is organised under the laws of the British Virgin Islands with its registered offices at Vanterpool Plaza, Wickhams Cay I, Road Town, Tortola, British Virgin Islands (hereafter referred to as « the Company »

The officers and Board of Directors of the company shall be as follows :

| | |
|---|---|
| President: | John H. Iglehart |
| Vice-President: | Annemarie Métrailler |
| Secretary-Treasurer: | Annemarie Métrailler |

## Article 2

The Client certifies hereby that he is the ultimate beneficial owner of the assets/securities to be held or managed by the company object of the present Agreement, and that the funds or assets in question are not of illegal or criminal origin or the proceeds of an illegal activity of any kind.

## Article 3

The Directors, in their capacity as Directors of the Company, shall each have single signature rights.

The directors shall undertake the necessary formalities for proper entry of the company into the Commercial Registry of the British Virgin Islands, and shall ensure that the Company remains in good standing in the country or jurisdiction of incorporation/registration.

## Article 4

The Directors shall only open bank or securities accounts with the authorisation of the Client or of his duly appointed representative.

The correspondence related to such accounts will remain at the disposal of the Client at the offices of the Directors. The address of the Directors will only be used by the Client on the company as a correspondence address for the purposes of non-Swiss resident companies, unless otherwise agreed.

## Article 5

The Client may choose to allow one or more individuals to represent him vis-à-vis the Directors, with single/joint signature rights, as follows :

## Article 6

The Directors, in their official capacity, certify that they will not proceed with any operation or transaction of any nature whatsoever without orders from the Client or his duly appointed representative.

The Directors will hold the share capital of the Company, i.e. US$ 50'000.00, in a fiduciary capacity, for the benefit of the Client.

It is understood that the directors may name themselves or third party correspondents, in particular as nominee shareholders or Directors in accordance with the wishes of the Client and/or the legislation prevailing in the jurisdiction governing the Company.

In case of powers given by the Company to third parties or to the client himself, the Client agrees that he will keep the directors fully informed of all transactions and operations undertaken on behalf of the Company, by promptly remitting copies of all pertinent documents to the Directors.

## Article 7

Even though operations will be undertaken in conformity with Article 4 above, it is hereby agreed and understood that all banking transactions will be done under the signature of one of the Directors, and the Client shall give a discharge of liability to all of the Directors. For the purposes of this Article 7, the Directors may name as signatories on a bank account requested by the Client, a member of his staff (also covered by the Director's confidentiality rules), in particular if volume or rapidity of bank transactions should so warrant, and after notification to the client in such cases.

## Article 8

At any time, but preceded by due notice given 15 days in advance, in writing, the Directors may resign from their position and the Client may request the Directors to resign at any time.

## Article 9

In cases where a General Meeting of Shareholders of the Company is required by applicable law or requested by the Client, or in relation to a specific commercial operation, and if the shares of the Company are in possession of the Client, said General Meeting of the Company shall be held on presentation of a bank certificate of deposit of the shares or on presentation of such shares by the Client, whose name shall not figure in the Minutes of such Meeting.

## Article 10

The Directors shall be discharged from all liability in the exercise of their functions except in the case of fraud or gross negligence, as per art. 100, para. 1 of the Swiss Code of Obligations. The Directors shall in particular not be liable for errors in transmission of instructions, banking or other, though the Directors will devote all appropriate diligence to avoid such errors in transmission. The Directors shall not be liable for losses or damage caused, directly or indirectly, by events or force majeure, states of declared or undeclared war, economic down-turns, or other unforeseen events. The Client also accepts specifically the risk linked to the Directors not being in a position, for reasons of confidentiality, to communicate in writing with the Client, but exclusively by phone.

## Article 11

The Client hereby declares and agrees to leave at all times an amount of approximately CHF 10'000.-- in the bank account of the Company for the payment of banking fees, domiciliation fees and Directors' fees, which are hereby agreed to be US$ 2'800.00 per year, exclusive of constitution fees and expenses, disbursements and specific or additional legal expenses other than those included in the aforementioned figure of US$ 2'800.00

## Article 12

The Client agrees to inform the Directors at least 15 days in advance of any sale or transfer of the share capital of the Company. The Directors shall at that time have the right to resign or make necessary arrangements with the new shareholder.

## Article 13

In case of death or permanent disability of the Client, the shares of the Company, along with all rights and obligations attached thereto, shall be remitted to :

50% share to Vanessa Stewart and 50% share to Charlotte Target. In case of death of one or the other of Vanessa Stewart or Charlotte Target, the share of the deceased shall be left to the survivor of Vanessa Stewart or Charlotte Target.

## Article 14

Should for any reason whatsoever the Directors not have, for one calendar year, the means to pay annual banking, domiciliation or Directors' fees or should, for one calendar year, the Client not have answered correspondence from the Directors or made known his wishes or intentions with respect to operations of the Company, the Directors shall have the right to sell the share capital of the Company and retain any remaining assets of the Company at the disposal of the Client, or liquidate the Company.

## Article 15

This Agreement shall remain strictly confidential between the parties hereto, and shall not be divulged to any third party whatsoever. In principle, only one original will be signed and will then be kept in the safe of the Directors. The Client acknowledges however that his name, address and passport copy, as beneficial owner of the Company, may be disclosed on the « A Form », as prescribed by the Swiss Banking Diligence Convention (or non-Swiss equivalent in other jurisdictions) to banks at which the client wishes to open accounts for the Company, or in the course of self-regulatory procedures under the Swiss LBA rules. The Client also declares that he has furnished to the Directors full and complete information and documents regarding the origin of all funds and assets object of the present Agreement or destined to be held by the Company.

It is also agreed that the Client, where applicable, will sign a Geneva Bar Association Power of Attorney in favour of John H. Iglehart and/or Louis M. Mudry or one of their associates, in conformity with now accepted Rules and Regulations of the Geneva Bar Association and Swiss Law.

## Article 16

Any litigation between the parties hereto shall be resolved by arbitration in Geneva, and the Geneva Chamber of Commerce and Industry Arbitration Regulations shall be applicable. The parties hereto hereby elect domicile in the offices of Mmes Louis M. Mudry and John H. Iglehart. Swiss law will apply in all respects.

Done in Geneva, this 19th day of March 2007

The Client                                           The Directors

3



**To:** bstewart2@hotmail.com
**Cc:** rbwpsgrp@hotmail.com
**Bcc:**
**Subject:** Jewelry

Dear Mrs. Stewart,

I am currently working on your financial statements and would like to confirm that your jewelry should NOT be listed as an asset because it is owned by Topaz Inc., an Irish corporation. Is this correct, please ~~advice..~~ advise

Regards,
Greta

Get the latest updates from MSN

MSN Home | My MSN | Hotmail | Search | Shopping | Money | People & Chat

© 2004 Microsoft Corporation. All rights reserved. TERMS OF USE   Advertise   TRUSTe Approved Privacy Statement   GetNetWise   Anti-Spam Policy   Feedback | Help

http://by99fd.bay99.hotmail.msn.com/cgi-bin/spellchk

5/11/2004



gagwpsgrp@hotmail.com

Printed: Tuesday, May 11, 2004 2:26 PM

From : Barbara Stewart <bstewart2@hotmail.com>
Sent : Tuesday, May 11, 2004 2:20 PM
To : gagwpsgrp@hotmail.com
Subject : RE: Jewelry

Greta,

Yes, it can't be my asset because I don't own it. I don't own Topaz either.

B.