IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA STEWART,<br><br>      Plaintiff,<br><br>v.<br><br>MICHELE STEWART a/k/a Michele Bouman-Stewart,<br><br>      Defendant. | Civil Action: **1:18-cv-00201-GWC**<br><br>**DECLARATION OF**<br>**DAVID B. GRANTZ, ESQ.** |

David B. Grantz, Esq. declares the truth of the following under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am an attorney-at-law of the State of New York and a Partner at Meyner and Landis LLP, attorneys of record for defendant, Michele Stewart a/k/a Michele Bouman-Stewart ("**Michele**") in the above captioned action.

2. I submit this declaration in reply to the opposition submitted by Plaintiff Barbara Stewart to Michele's Motion to Transfer Venue to the U.S. District Court for the Southern District of New York.

**The Initial Disclosures**

3. On January 9, 2019, the parties conducted a Rule 26(f) conference.

4. Pursuant to Rule 26(a)(1)(C), fourteen days after the parties' Rule 26(f) conference on January 23, 2019, we served Initial Disclosures pursuant to Federal Rule of Civil Procedure 26 on behalf of Michele to Plaintiff. Attached as Exhibit 1 is a true and correct version of Michele's Initial Disclosures submitted pursuant to Rule 26 in the above referenced matter.

1

5. On February 6, 2019, Plaintiff's counsel served us with Plaintiff's Initial Disclosures pursuant to Rule 26. Attached as Exhibit 2 is a true and correct version of Plaintiff's Initial Disclosures submitted pursuant to Rule 26 in the above referenced matter.

6. Both sets of initial disclosures list the parties, Mr. Iglehart and William P. Stewart, Jr. as potential witnesses. Michele also lists Greg Stewart ("Greg"), William P. Stewart, III ("Tres"), Charles Target ("Target"), Ralph Belfiore ("Belfiore") and Greta Gallas ("Gallas") as potential witnesses who will testify about matters pertinent to this case.

7. On January 11, 2019, Plaintiff sent me a Joint Proposed Discovery Plan with Plaintiff's proposed timelines. A copy of the Joint Proposed Discovery Plan that Plaintiff submitted is attached as Exhibit 3.

**Plaintiff's Counsel Regularly Litigates on Her behalf In New York County.**

8. Mr. Marcus and Mr. Yankalunes are currently litigating multiple cases for Plaintiff in New York County and have been continuously litigating on her behalf in New York County for approximately ten (10) years.

9. Mr. Marcus and/or Mr. Yankalunas currently represent Plaintiff in three (3) separate lawsuits in New York County, and in prior cases involving her efforts to destroy her children's trusts.

10. Plaintiff has been sued by her son Greg on behalf of his trust in "*In re Matter of Gregory Stewart Trust*, File No. 2005-3833" in the New York County Surrogate's Court for a surcharge against her for alleged bad acts while she served as Co-Trustee of Greg's trust. Mr. Marcus represents Plaintiff as a respondent in that pending lawsuit in New York County Surrogate Court.

2

11. Plaintiff sued Bill, Bill's attorney Kenneth Page, Esq., a Trusts and Estates attorney and his prior law firm Coudert Brothers in New York County Surrogate's Court alleging that Bill breached fiduciary duties to her and Mr. Page and Coudert Brothers aided and abetted Bill in doing so and she is seeking millions from them in a matter entitled "*Barbara Stewart v. William P. Stewart, Jr. et al.*, File No. 2005/3833-A". Mr. Marcus and Mr. Yankalunas represent Plaintiff as the Petitioner in that pending lawsuit in New York County Surrogates Court.

12. Plaintiff has been sued by the Stewart Family LLC and she has filed a Third Party Action against Bill in a matter entitled "*Stewart Family LLC, Plaintiff v. Barbara Stewart, Defendant; Barbara Stewart, Third-Party Plaintiff v. William Stewart, Jr., Third-Party Defendant*, Index No.: 156827/2018". In this lawsuit the Stewart Family LLC seeks to recover artwork valued over $1.62 million that Plaintiff removed from her apartment in New York City and secreted to the detriment of the Stewart Family LLC. Mr. Marcus represents Plaintiff as a Defendant and Third Party Plaintiff in that lawsuit in New York County.

**The Surrogate's Court Matter**

13. Starting in 2005, Greg and Tres filed petitions (which bore File No. 2005/3833) with the New York State Surrogate's Court, New York County, to remove Barbara as co-trustee of trusts that existed in favor of Greg and Tres, among other relief. Later in the litigations, her other children, Lisa and Jeff also sought to have Plaintiff removed as a co-trustee of their respective trusts.

14. In response, Barbara filed various petitions against her children and Bill as co-trustee seeking to destroy the trusts so that she (and Bill) would have all of the money/assets owned by the respective trusts for themselves. She also sought to invade the principal of another trust that

3

had been set up to provide her income for life so that she could have all the principal from that trust paid to her immediately. She also sought payment of statutory annual trustee commissions for the years that she served as a co-trustee, among other things.

15. Plaintiff contended that all of her children's' trusts were shams and they should be unwound, as all the trust assets belonged to her and Bill to the exclusion of her children. She lost every petition that she filed, except a single petition seeking annual trustee commissions for her service as a co-trustee before the Court removed her for her improprieties as a co-trustee.

16. Mr. Marcus represented Plaintiff in these Surrogate Court proceedings.

17. In the context of that litigation, the Judge appointed a Referee, who issued a Report ("**Report**") following an Omnibus Hearing that he conducted on January 25-28, 2010. Attached as Exhibit 4 are excerpts from that Report.

18. In the Report, the Referee issued recommendations on issues relevant to this action. For example, the Referee held:

> Tellingly, however, although Barbara's November 2008 application papers alleged that she lacked sufficient funds to fly home to Switzerland (Omnibus Hearing Tr. 924:13-925:17; Barbara 11/11/08 Aff., at 14), only six weeks later she did, in fact, fly to Switzerland, on a chartered private jet (as the only passenger, other than her dog), at a one-way cost of $130,000 (Barbara, Omnibus Hearing Tr. 927:22-931:12). She then returned to the United States a few months later in March 2009, again by private jet, again at a cost of $130,000 *(Id.* at 931:17-932: 11 ).18 These lavish if not exorbitant expenditures largely negate any reasonable claim of "dire" financial need.

Referee's Report, dated November 8, 2010, at 41, Exhibit 4.

19. The Referee also held:

There is also evidence that Barbara flew by private jet in February, May and June of 2008, shortly before her November 2008 application to invade the principal of the Jeffrey FBO Trust (Omnibus Hearing Tr. 932:8-933-10; 935:5-18).

4

Referee's Report, dated November 8, 2010, at note 18, Exhibit 4.

    20.    Further, the Referee held:

> Barbara failed to produce documents concerning her Agravina ownership interest, and the payment streams (loan repayments and/or dividends) related to that interest. Barbara testified that Agravina documentation "doesn't exist" (Barbara, Omnibus Hearing Tr. 968:13-22), and that "[t]hey don't have documents.... They don't have any. It's a farm in Vietnam. They don't do documents" *(Id.* at 884:4-11). This assertion with respect to a 1,300-employee multimillion dollar company that Bill testified (without contradiction) is audited by KPMG, a major international accounting firm (Bill, Omnibus Hearing Tr. 1096:14-1097:14) -- was not credible. Barbara later conceded that Charles Target (who receives Agravina payments on her behalf) *does* have Agravina documents (Barbara, Omnibus Hearing Tr. 1043:22-1044:6), but that when she spoke with him he refused to provide them in this litigation *(Id.* at 970:18-971:19; 995:4-996:8).

Referee's Report, dated November 8, 2010, at 45, Exhibit 4.

    21.    The Referee also noted:

> To the extent Charles Target receives an income stream and related documentation on account of Barbara's ownership interest in Agravina, he does so on her behalf, and as her agent. The documents he possesses in his capacity as her agent are deemed to be within Barbara's possession, custody or control (CPLR § 3101 [a] [1] [providing for full disclosure by "a party, or the officer, director, member, *agent* or employee of a party"; emphasis supplied]; *Main Place Pharmacy Corp.* v. *Central Buffalo Project Corp.,* 55 AD2d 1007, 1007 [4th Dept 1977] [requiring production of records held by party's auditor agent]). As a result, Barbara is responsible for the failure to produce those Agravina documents, and it is reasonable to draw the inference that if they had been produced, the documents would have tended to disprove Barbara's claim of dire financial need.

Referee's Report, dated November 8, 2010, at 46, Exhibit 4.

    22.    The Referee also held:

> I also find an adverse inference appropriate with respect to Barbara's refusal to execute and provide authorizations to allow Jeffrey to independently verify her financial condition. ... Barbara testified that she refused to sign the bank record authorizations because she found them "offensive" and was concerned that they would cause her Swiss neighbors to think that she was involved in criminal offenses such as drug smuggling, money laundering, white slavery and organized crime *(Id.* at 965:15-968:3 ["I didn't want my neighbors to think I was a criminal"]). As I

5

indicated (and Barbara's counsel effectively conceded) at the Omnibus Hearing, however, the CPLR does not provide an exception to the duty to comply with discovery where doing so may be embarrassing among one's neighbors (Omnibus Hearing Tr. 303:22304:11).

Referee's Report, dated November 8, 2010, at 46-48, Exhibit 4.

23. After the Referee submitted the Report, the Court adopted the Referee's ruling and held:

The court further agrees with the referee that the trust instrument allows the trustee to consider Barbara's needs and other sources of income and that she failed to show evidence of need for principal invasions. The referee correctly inferred from Barbara's failure to provide certain documents requested in discovery with respect to her finances that such documents, if produced, would have contained evidence adverse to her claim of dire financial need. The referee's findings of fact and conclusions of law are fully supported by the record, and the court therefore adopts his recommendation that the trustee not be ordered to make the requested invasion of principal for Barbara.

*See* Order, dated December 1, 2011, *In Re Stewart Inter Vivos Trust*, 34 Misc. 3d 1216[A] (Sur Ct. NY County 2011), an excerpt of which is attached hereto as Exhibit 5.

**The Divorce Action**

24. On January 23, 2007, Barbara commenced a divorce action against Bill in the New York State Supreme Court, New York County. In that litigation, the Judge issued a Decision and Order, dated January 14, 2014, which also contained holdings relevant to this action.

25. For example, the Court held:

The Wife [Barbara] was not a credible witness. Her testimony frequently contradicted itself, and was also contradicted by the testimony of other witnesses and by documentary evidence. In addition, the Wife failed to produce complete documentation of her finances to the Husband [Bill] in this action, both in discovery and in response to trial subpoenas.

*See* Decision and Order, dated January 14, 2014, *Barbara Stewart v. William Stewart*, Index No. 350054/2007, at 2, a true and correct excerpt of which is attached hereto as Exhibit 6.

26. In addition, the Court held:

Both parties have been opaque about their finances throughout this litigation, not only with each other, but with the court and experts appointed by the court. The testimony and evidence at trial paint a picture of a family whose complex financial lives take place inside a tightly closed circle, within which they have a history of secrecy and distrust among and between family members that is nearly as strong as their habit of secrecy from, and distrust of, the outside world. For example, the parties have maintained separate bank accounts, and filed separate tax returns for the last 30 years, and each party failed and refused to produce financial information and documentation in discovery and at trial. The testimony and documents entered into evidence at trial support the Report's finding that both parties have accounts and other assets that they have attempted to keep secret, even from their own financial staff, who frequently made adjustments to the family balance sheets and other records based solely on what the Wife or Husband told them, without the benefit of any documentation supporting what they were told.

*See* Decision and Order, dated January 14, 2014, *Barbara Stewart v. William Stewart*, Index No. 350054/2007, at 3, a true and correct excerpt of which is attached hereto as Exhibit 6.

27. In addition, the Court held:

The Report found that the Wife secreted valuable marital assets during the marriage, and that she failed and refused to provide information about these assets during this litigation.

*See* Decision and Order, dated January 14, 2014, *Barbara Stewart v. William Stewart*, Index No. 350054/2007, at 12, a true and correct excerpt of which is attached hereto as Exhibit 6.

28. Further, the Court held:

The parties (sic) son Gregory testified that the Wife had several Swiss accounts, including one at Spangler Bank. He further testified that the Wife had admitted to him in or about 2004 that she had over $40 million in overseas accounts, and she did not dispute this at trial. The Report correctly found that the Wife's denial that she had foreign bank accounts, including with Spangler Bank in Switzerland, and Landesbank in Germany, was incredible. … She also failed to sign the authorizations the Husband's attorneys served on her, which would have permitted the Husband to obtain information about her foreign accounts. In all, the Report found that the Wife had secreted approximately $40 million worth of marital funds that would otherwise have been subject to equitable distribution, and that she failed and refused to provide information about these assets during this litigation.

*See* Decision and Order, dated January 14, 2014, *Barbara Stewart v. William Stewart*, Index No. 350054/2007, at 13, a true and correct excerpt of which is attached hereto as Exhibit 6.

29. In addition, the Court stated:

The Report recommends that the Wife's request for an award of lifetime maintenance be denied, and that the Wife receive no award of maintenance, based on its finding that the parties will be in similar financial situations following equitable distribution, and its finding that the Wife has many millions of dollars in assets that she failed and refused to disclose.

*See* Decision and Order, dated January 14, 2014, *Barbara Stewart v. William Stewart*, Index No. 350054/2007, at 23, a true and correct excerpt of which is attached hereto as Exhibit 6.

I declare under penalty of perjury that the foregoing is true and correct.

_____
David B. Grantz, Esq.

Dated: February 8, 2019